IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

REGINA MCDONALD,

    Plaintiff,

    v.

CARE CENTER (LINDA VISTA), INC,

    Defendant.

Case No. 1:13-cv-01882-CL

**ORDER**

CLARKE, Magistrate Judge.

    This matter comes before the court on a motion for summary judgment (#17) filed by defendant Care Center (Linda Vista), Inc. ("Defendant"). Defendant requests plaintiff Regina McDonald's ("Plaintiff") complaint be dismissed in its entirety. Def. Mot. at 1. In response, Plaintiff has voluntarily dismissed her claims of wrongful discharge, age discrimination, and interference with Family Medical Leave Act rights. Pl.'s Resp. at 4; First Am. Compl. As such,

Page 1 – ORDER

only two claims for relief remain: Plaintiff's claim of disability discrimination in violation of the Americans with Disabilities Act ("ADA") and her claim of intentional infliction of emotional distress ("IIED"). For the reasons stated below, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND

This action arises as a result of Defendant's termination of Plaintiff, which occurred on March 1, 2012, three days after Plaintiff's work-related injury. McDonald Dep. 94:1-95:19. Plaintiff worked for Defendant as a Licensed Practical Nurse ("LPN"). Atterberry Dep. 18:18-19. Defendant is an assisted living community located in Ashland, Oregon. Atterberry Dep. 13:18-21.

### I. Plaintiff's Injury

On February 27, 2012, Plaintiff fell while administering care to a resident. McDonald Dep. 178:17-21. Plaintiff reported the incident to Defendant's director of nurses, Cheryl Atterberry, and filled out an incident report, describing the injuries she suffered as a result of her fall. McDonald Dep. 92:10-16; 93:1-24. Following the incident, Plaintiff completed her shift, but was limited to sedentary work. McDonald Dep. 98:6-9. Plaintiff had the next two days off from work. McDonald Dep. 94:12-14. When Plaintiff returned to work on March 1, 2012, she had not yet seen a doctor; however, Plaintiff notified Ms. Atterberry that she was in pain and had an appointment to see her general practitioner doctor the next day. McDonald Dep. 94:18-95:15. Plaintiff completed her shift on March 1, 2012, engaging in largely non-demanding, sedentary tasks. McDonald Dep. 98:2-12. Plaintiff never missed any work because of her injury. McDonald Dep. 94:12-95:22. Plaintiff's physician later determined that Plaintiff suffered multiple broken ribs and a pinched nerve in her left elbow. McDonald Dep. 96:24-97:25.

## II.    Defendant's Investigation of Plaintiff's Conduct

Plaintiff's supervisor, Laurie Harris, became suspicious that Plaintiff was failing to properly pass medications to her residents in mid-February 2012. Harris Dep. 139:19-140:2. First, Ms. Harris was informed by a nurse who regularly worked with Plaintiff that Plaintiff had serially failed to give the prescribed medications to residents and had been altering medication records. Harris Dep. 140:5-10. Ms. Harris had also noticed that a number of residents assigned to Plaintiff were reporting increased pain. Harris Dep. 128:2-10. Ms. Harris brought the issue to Ms. Atterberry. Atterberry Dep. 59:1-6. Ms. Atterberry directed Ms. Harris to further investigate the matter. Harris Dep. 198:7-9. The parties dispute when the investigation into Plaintiff's conduct commenced. Plaintiff points to testimony that Ms. Harris did not begin investigating Plaintiff until three or four days prior to Plaintiff's termination, around the time of Plaintiff's injury. See Harris Dep. 139:22-140:2. Defendant points to testimony that Ms. Harris's investigation into Plaintiff began a couple of weeks before Plaintiff's termination. Atterberry Dep. 59:10-19.

Ms. Harris found that Plaintiff had committed over 100 medical errors and violations of nursing protocol. Harris Dep. 203:1-203:13. However, Defendant only documented 45 errors because it found they were sufficient to justify termination. Harris Dep. 140:20-141:3; 202:10-203:18. Plaintiff's violations fell into five categories. First, Defendant identified over 100 instances in which Plaintiff checked out medicine but failed to administer it to residents. Harris Dep. 200:14-203:8. Plaintiff does not dispute that she committed these errors. McDonald Dep. 111:3-112:12. Second, Plaintiff improperly altered other nurses' entries in a narcotics reconciliation book. Harris Dep. 119:17-121:11. Plaintiff does not dispute that she made these alterations. McDonald Dep. 145:13-19. Third, Plaintiff failed to make a timely note of a doctor's

changes to a patient's prescription and, as a result, the patient received the incorrect medication for three days. Harris Dep. 191:1-192:19. Plaintiff disputes her involvement in this incident. 149:4-150:15. She testified that she learned of the changes near the end of her shift and told another nurse to update the patient file. Id. Fourth, Ms. Harris identified one instance in which Plaintiff discontinued a prescription without a doctor's orders. Harris Dep. 187:7-189:12. Plaintiff disputes this error and maintains that she acted on a nurse practitioner's instruction. McDonald Dep. 155:17-20. Fifth, Ms. Harris' report noted Plaintiff habitually changed medicine administration times for her own convenience in violation of doctors' orders. Harris Dep. 135:13-136:4. Plaintiff disputes this assertion. McDonald Dep. 158:17-159:17. In addition to the five categories of errors explored in Ms. Harris' report, Plaintiff had an adversarial relationship with Ms. Harris and physical therapists who provided services to Defendant's residents. Harris Dep. 152:3-16; Atterberry Dep. 153:20-24.

### III.    Plaintiff's Termination

After completing the investigation, Ms. Harris presented her findings and documentation to Ms. Atterberry. Harris Dep. 208:24-210:2. Ms. Harris also met with Brenda Thornton, the hospital administrator. Atterberry Dep. 92:21-24. Both Ms. Atterberry and Ms. Thornton reviewed Ms. Harris's report and made the decision to terminate Plaintiff. Atterberry Dep. 93:1-17. Ms. Harris did not actively participate in the decision. Atterberry Dep. 93:8-14.

At the end of Plaintiff's shift on March 1, 2012, Ms. Atterberry and Ms. Thornton met with Plaintiff and informed her that she was being terminated due to an investigation that revealed she had committed serious medication errors. McDonald Dep. 95:15-21; Atterberry Dep. 55:22-25; 70:13-71:24. Ms. Atterberry walked Plaintiff through a one-page memorandum she had drafted that summarized the reasons for her termination. Atterberry Dep. 55:22-25. Ms.

Thornton and Ms. Atterberry also provided Plaintiff with a copy of Ms. Harris's report. Atterberry Dep. 70:13-71:24. Ms. Thornton and Ms. Atterberry gave Plaintiff an opportunity to respond. Id. Plaintiff did not offer any explanation or excuse. Atterberry Dep. 71:17-72:1.

## STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material issue of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. Id. at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

Plaintiff originally brought five claims for relief against Defendant. First Am. Compl. ¶¶ 18-47. In response, Plaintiff has voluntarily dismissed her claims of wrongful discharge, age discrimination, and interference with Family Medical Leave Act rights. Pl.'s Resp. at 4. Thus, two claims for relief against Defendant remain. Pl. Resp. at 7-16. First, Plaintiff alleges discriminatory discharge under the ADA. First. Am. Compl. ¶ 19. Second, Plaintiff alleges intentional infliction of emotional distress. Id. at ¶ 47. Defendant moves for summary judgment on both remaining claims.

I.  **Defendant is not entitled to summary judgment on Plaintiff's claim of discriminatory discharge.**

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the . . . discharge of employees." 42 U.S.C. § 12112(a). In order to prevail on an ADA claim, a plaintiff must first establish a *prima facie* case of discrimination by showing that he or she: (1) has or is perceived as having a disability; (2) is a qualified individual, meaning she can perform the essential functions of her job; and (3) was terminated because of her disability. See e.g., Nunes v. Wal–Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir.1999).

Title I ADA cases are analyzed using the burden-shifting analysis from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See e.g., Risteen v. Wal–Mart Stores, Inc., 2010 WL 1838105, at *3 (D.Or. April 30, 2010) (citing Snead v. Metropolitan Prop. & Cas. Ins. Co., 237 F.3d 1080, 1087 (9th Cir. 2001)). Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to provide a non-discriminatory reason for the adverse employment action. McDonnell Douglas Corp., 411 U.S. at 802-03. If defendant does so, the burden then shifts back to plaintiff to show defendant's reason was a pretext for discrimination. Id.

  a.  **Whether Plaintiff is Disabled**

Page 6 – ORDER

"Disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Under the regulations, "major life activity" means functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limited" refers to the inability to perform a major life activity as compared to the average person in the general population or a significant restriction as to the condition, manner, or duration under which an individual can perform the particular activity. 29 C.F.R. § 1630.2(j)(1)(ii); see also Thompson v. Holy Family Hosp., 121 F.3d 537, 539–40 (9th Cir. 1997).

The threshold question of disability should not demand extensive analysis. 29 C.F.R. § 1630.2(j)(1)(iii). "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." Id. Courts should construe the term "substantially limits" broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(i).

Plaintiff has presented evidence that she had a physical impairment at the time she was terminated: three broken ribs and a pinched nerve. McDonald Dep. 97:11-23; 178:17-21. She testified that the injury affected her ability to breath. McDonald Dep. 101:4-6. Breathing is a major life activity. Bragdon v. Abbott, 524 U.S. 624, 659 (1998). Unlike the average person, Plaintiff testified that her breath was labored and painful. McDonald Dep. 101:4-6. Considered in conjunction with Plaintiff's testimony that she was unable to exert herself and had to remain largely sedentary as a result of her injury, there is sufficient evidence in the record to raise a genuine issue of fact as to whether Plaintiff's injuries substantially limited a major life activity and, thus, whether she was disabled as defined by the ADA.

### b. Whether Plaintiff is Regarded as Disabled

Summary judgment is also inappropriate as to Plaintiff's alternative theory that Defendant regarded her as disabled. "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Under the "regarded as" prong of the ADA, a covered entity must "entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." Sutton v. United Airlines, Inc., 527 U.S. 471, 489 (1999); Busiere v. Providence Health Sys.-Or., 2006 WL 3827460, at *10 (D.Or. 2006). "[T]he purpose of the regarded as prong is to cover individuals rejected from a job because of the myths, fears and stereotypes associated with disabilities." Johnson v. Paradise Valley Unified School Dist., 251 F.3d 1222, 1229 (9th Cir. 2001); Busiere, 2006 WL 3827460, at *10.

In Busiere v. Providence Health System-Oregon, 2006 WL 3827460, at *10, the court granted the defendant summary judgment because the plaintiff could only show that the defendant was aware of her disorder. The court explained that "knowledge of a disorder is not, standing alone, proof that [the defendant] regarded [the plaintiff] as substantially limited in a major life activity." Id. Here, by contrast, Plaintiff not only informed Defendant of her accident, she informed Defendant that she was having difficulty breathing, a major life activity. McDonald Dep. 92:10-16; 99:16-25. In addition, Plaintiff finished her February 27 shift, and worked her March 1 shift, by engaging largely in non-demanding, sedentary work due to her restricted physical abilities. McDonald Dep. 98:6-9. Therefore, Defendant had more than mere knowledge

of Plaintiff's disorder. Defendant also had knowledge that Plaintiff was experiencing difficulty breathing and was restricted in work-related activities. When viewed in the light most favorable to Plaintiff, it is in dispute whether Defendant perceived Plaintiff to be suffering from an impairment that substantially limited her major life activities. Plaintiff has, therefore, raised a genuine issue of material fact as to whether Defendant regarded her as disabled under the ADA.

### c. Termination Because of Disability

To state a *prima facie* case under the ADA, Plaintiff must also show that Defendant terminated her because of her disability. Causation can be inferred from the proximity of time between the protected action and the allegedly unlawful discharge. Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 507 (9th Cir. 2000). In order to support an inference of discriminatory motive, the termination must have occurred "fairly soon" after the employee's protected activity. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) (quoting Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1009–10 (7th Cir. 2000)). For instance, in Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987), the Ninth Circuit held a three month lapse between protected activity and adverse employment action was "sufficiently probative of a causal link" to establish a *prima facie* case.

Plaintiff's evidence easily triggers this inference. She was injured on February 27, 2012. McDonald Dep. 178:17-21. Plaintiff terminated her three days later, on March 1, 2012. McDonald Dep. 95:15-21. The lapse of time between these two events falls well within the window found to be inferential by the Ninth Circuit in Yartzoff. Id. Therefore, Plaintiff has stated a *prima facie* case of discrimination under the ADA.

### d. Non-Discriminatory Reason for Termination

Even though Plaintiff has stated a prima face case of discrimination, Defendant has proffered non-discriminatory reasons for Plaintiff's termination. Under the ADA, when an employee establishes a *prima facie* case of disability discrimination, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp., 411 U.S. at 802; Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1092-93 (9th Cir. 2001). "The employer need not persuade the court that it was actually motivated by the proffered reasons: it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Yartzoff, 809 F.2d at 1376 (internal quotations omitted). "Thus [the defendant] need only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus." Id. (internal quotations omitted).

In Miller v. Fairchild Industries, Inc., 797 F.2d 727, 732 (9th Cir. 1986), the Ninth Circuit determined that the employer met its burden of production merely by stating that economic necessity prompted the employees' termination. Here, Defendant found that Plaintiff had committed at least forty-five medical errors and violations of nursing protocol.[1] According to Defendant, Plaintiff (1) failed to administer scheduled medications to residents and failed to properly account for medication; (2) altered medication records by improperly making changes to entries made by other nurses; (3) failed to timely and properly note doctor-prescribed medication changes; (4) discontinued medication without a doctor's order; (5) changed medication administration times, contrary to doctor's orders; and (6) had an adversarial relationship towards Ms. Harris and physical therapists. Defendant asserts that, alone, any of

---

[1] Defendant states Plaintiff committed over 100 medical errors and violations of nursing protocol. Defendant, however, only document forty-five errors. Harris Dep. 203:1-203:13.

Page 10 – ORDER

these reasons are sufficient grounds for termination. Atterberry Dep. 87:5-20. The Court agrees. If economic necessity is a sufficient, non-discriminatory reason for termination, then Defendant's aforementioned non-discriminatory reasons would certainly allow the trier of fact to rationally conclude that the employment decision was not motivated by discriminatory animus.

### e. Plaintiff's Burden to Show Pretext

Because Defendant has proffered legitimate, non-discriminatory reasons for the employment action, the burden shifts to the Plaintiff to show that Defendant's proffered reasons are mere pretext. McDonnell Douglas Corp., 411 U.S. at 804. Plaintiff must demonstrate that Defendant's proffered reasons are mere pretext by "either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 658-59 (9th Cir. 2002) (quoting Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1124 (9th Cir. 2000)) (internal quotations omitted). Plaintiff "need produce 'very little evidence of discriminatory motive to raise a genuine issue of fact' as to pretext." Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995) (quoting Lindahl v. Air France, 930 F.2d 1434, 1437 (9th Cir. 1991)). The mere existence of a *prima facie* case will not suffice, but evidence used to establish the *prima facie* case plus minimal additional showings will preclude summary judgment. Strother v. S. California Permanente Med. Grp., 79 F.3d 859, 870 (9th Cir. 1996). "Accordingly, . . . a grant of summary judgment, though appropriate when evidence of discriminatory intent is totally lacking, is generally unsuitable in ... cases in which the plaintiff has established a prima face case because of the 'elusive factual question' of intentional discrimination." Yartzoff, 809 F.2d at 1377 (quoting Miller, 797 F.2d at 732-33) (internal quotations omitted).

Page 11 – ORDER

Plaintiff makes three arguments as to why Defendant's proffered reasons are mere pretext. First, Plaintiff argues that the close timing between her injury and termination is circumstantial evidence of pretext. Pl.'s Resp. at 6. Second, Plaintiff argues that Defendant should not have fired Plaintiff but rather should have educated Plaintiff as to what she was doing. McDonald Dep. 180:12-19. Third, Plaintiff offers evidence that other nurses made similar errors without facing the same adverse employment actions; thus, indicating that Plaintiff's errors may not have been the true reason for her dismissal. McDonald Dep. 111:3-112:12; 145:11-146:4; Harris. Dep. 201:19-25. Together, Plaintiff's arguments raise a genuine issue of material fact.

Plaintiff argues that the temporal proximity of her injuries and her termination raises a genuine issue of material fact as to whether she was terminated for discriminatory purposes. Such "evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant." Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 507 (9th Cir. 2000). In Miller, 885 F.2d at 505, the Ninth Circuit stated that when evaluating whether an employer's proffered reason for termination was pretextual, "a jury could consider the timing of the [plaintiff's] layoffs" which occurred 42 to 59 days after plaintiffs engaged in protected conduct. Here, Defendant terminated Plaintiff three days after she broke three ribs and damaged a nerve in her left elbow. Thus, a jury could consider the timing of Plaintiff's layoff when considering whether Defendant's proffered reason is pretextual.

Plaintiff asserts that it was common practice among Defendant's nurses to fail to administer scheduled medications to residents and to improperly account for medication. A showing that Defendant treated similarly situated employees who were not physically impaired more favorably than Plaintiff would be probative of pretext. Vasquez v. County of Los Angeles,

349 F.3d 634, 641 (9th Cir. 2003). "[W]hether two employees are similarly situated is ordinarily a question of fact." Beck v. United Food & Commercial Workers Union Local 99, 506 F.3d 874, 885 n.5 (9th Cir. 2007).

In support of her argument, Plaintiff cites Defendant's drug reconciliation sheets from 2011 until Plaintiff's termination on March 1, 2012. The drug reconciliation sheets were used to investigate Plaintiff's errors. See Exhibit 1. After reviewing twenty-five percent of the drug reconciliation sheets, Plaintiff found sixteen similar instances where nurses committed documentation errors. See Exhibit 2. In addition, Plaintiff found fifty examples of narcotics not being given at their scheduled time. See Exhibit 4. Thus, Plaintiff asserts that Defendant's employees appear to routinely commit similar mistakes. When asked about this, Ms. Harris testified that she was aware of other nurses who committed documentation errors. Harris. Dep. 201:19-20. Ms. Harris further stated that, when she found out about it, she would educate the nurses not to do that. Harris Dep. 201:20-21. Therefore, Plaintiff maintains that she should not have been fired, but rather should have been educated as to what she was doing wrong. McDonald Dep. 180:12-19.

The court's role is not to "substitute its own judgment about whether the employment [decision was] wise, or even fair." Odima v. Westin Tuscon Hotel Co., 991 F.2d 595, 602 (9th Cir. 1993). Here, however, evidence in the record raises questions about whether Plaintiff was treated differently than other nurses who may have committed the same or similar errors. If proven at trial, evidence of disparate treatment would bear on the pretext issue. See Vasquez, 349 F.3d at 641.

Moreover, when Plaintiff's evidence of alleged errors and disparate treatment is viewed in combination with the timing of Plaintiff's termination, and the dispute as to when Defendant's

investigation into Plaintiff began, Plaintiff sufficiently raises a genuine issue of fact. Indeed, Ms. Harris herself testified that she became suspicious of Plaintiff in mid-February but did not begin investigating Plaintiff until three or four days prior to her termination, around the time of Plaintiff's injury. Plaintiff should, therefore, be afforded the opportunity to cross-examine Ms. Harris, and others, and allow the factfinder to determine whether Defendant delayed its investigation into Plaintiff's errors until the time of her injury. Thus, Plaintiff's evidence of pretext is sufficient to withstand summary judgment on the issue of whether defendant's proffered reasons for termination are pre-textual. See Miller, 797 F.2d at 731-732; see also Burros v. Chemed Corp, 567 F.Supp. 978, 986 (E.D. Mo. 1983) aff'd, 743 F.2d 612 (8th Cir. 1984) (*prima facie* case established by showing that discrimination charges were filed with the EEOC, defendants were aware of the lawsuit, plaintiff was demoted, and the transfer followed the protected activity, thus raising an inference of retaliatory motive).

Plaintiff's circumstantial evidence that Defendant's given rationales are mere pretext is not strong. Nevertheless, based on the evidence presented, a jury could reasonably find that Plaintiff's injury motivated Defendant's adverse employment action. After weighing the evidence and evaluating witness credibility, the jury might find that Plaintiff failed to prove discrimination. However, for the aforementioned reasons, Plaintiff has raised a genuine issue of material fact as to whether Defendant's proffered reasons for termination are mere pretext and whether Plaintiff was, instead, terminated for discriminatory purposes. As a result, Defendant's motion for summary judgment on Plaintiff's claim of discriminatory discharge is denied.

## II. Defendant is entitled to summary judgment on Plaintiff's claim of intentional infliction of emotional distress.

Plaintiff claims that Defendant's misconduct in terminating Plaintiff's employment was outrageous and constitutes intentional infliction of emotional distress. First Am. Compl. ¶¶ 46-

Page 14 – ORDER

48. Plaintiff alleges that, as a result of Defendant's misconduct, Plaintiff has suffered, and will continue to suffer, emotional distress and mental pain and suffering. First Am. Compl. ¶ 48. In the alternative, Plaintiff requests that the court grant Plaintiff leave to amend her complaint to comply with the court's requirements if the court finds that Plaintiff failed to raise a genuine issue of material fact. Pl.'s Resp. at 19.

In order to establish a claim of intentional infliction of emotional distress, Plaintiff must allege facts showing: (1) "that defendant[] intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress; (2) that defendant[] engaged in outrageous conduct, i.e., conduct extraordinarily beyond the bounds of socially tolerable behavior; and (3) that defendant[]'s conduct in fact caused plaintiff severe emotional distress." House v. Hicks, 179 P.3d 730, 736 (Or. App. 2008). "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." Madani v. Kendall Ford, Inc., 818 P.2d 930, 934 (1991). "In the employment context ... a wrongful discharge from employment by itself [is] not the type of conduct that would support an IIED claim." House, 179 P.3d at 740. However, "[a]n employee who has been discharged can state a claim for intentional infliction of emotional distress if the employer committed abusive acts in the course of firing." Madani, 818 P.2d at 934.

Plaintiff's intentional infliction of emotional distress fails as a matter of law. First, outside of Defendant's alleged discrimination-based wrongful discharge, Plaintiff does not allege Defendant committed abusive acts in the course of firing Plaintiff. Wrongful discharge by itself is insufficient to support a claim of intentional infliction of emotional distress. Second, beyond a conclusory statement that Plaintiff has suffered, and will continue to suffer, emotional distress and mental pain and suffering, Plaintiff has not provided the court with any evidence that

Plaintiff actually suffered severe emotional distress as a result of Defendant's conduct. Therefore, Plaintiff has not raised a genuine issue of material fact as to whether Plaintiff suffered severe emotional distress. Defendant's motion for summary judgment is granted.

Plaintiff asks the court to grant her leave to amend her complaint to allege facts sufficient to state an IIED claim. Leave to amend should be granted unless it is clear that the complaint cannot possibly be cured by the allegation of additional facts. Lucas v. Dep't of Corrs., 66 F.3d 245, 248 (9th Cir. 1995); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires"). Here, the timing of Plaintiff's request — after the parties have conducted discovery and fully briefed the issue for the summary judgment motion — weighs heavily against leave. At this late stage in the case, amendment of the complaint appears futile. Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient."). Accordingly, Plaintiff's request for leave to amend is denied.

## ORDER

For the reasons stated above, Defendant's motion for summary judgment (#17) is GRANTED as to Plaintiff's IIED claim and DENIED as to Plaintiff's disability discrimination claim. Plaintiff's request for leave to amend (#21) is DENIED.

It is so ORDERED and DATED this ___7___ day of August 2014.

MARK D. CLARKE
United States Magistrate Judge